## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CODY CLARK, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-00695 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| MICROSOFT CORPORATION, | Hon. Elaine E. Bucklo |
| Defendant. | Hon. Maria Valdez |

Plaintiff Cody Clark ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, make the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

### NATURE OF ACTION

1.      Plaintiff brings this action for damages and other legal and equitable remedies resulting from the illegal actions of Defendant Microsoft Corporation ("Defendant") or "Microsoft") in possessing, collecting, capturing, storing, using, and/or otherwise obtaining his and other similarly situated individuals' biometric identifiers[1] and biometric information[2] (referred to collectively as "biometrics")—specifically, Plaintiff's facial geometry—without obtaining informed written consent or providing or complying with the requisite data retention and destruction policies, in direct violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, voiceprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

2.    The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information."  740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed.  Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions."  *Id.*

3.    In recognition of these concerns over the security of individuals' biometrics the Illinois Legislature enacted BIPA, which provides, *inter alia*, that a private entity like Defendant that collects, captures, purchases, receives, stores, uses, or otherwise obtains biometrics must first (i) inform individuals in writing that biometrics are being collected, (ii) inform individuals in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (iii) procure a written release from individuals authorizing the collection of biometrics.  740 ILCS 14/15(b)(1)-(3).

4.    Moreover, private entities like Defendant that possess biometrics must publish a publicly available retention schedule and guidelines for permanently destroying biometrics, as well as comply with those guidelines.  *See* 740 ILCS 14/15(a).  Any such retention and deletion schedule must be created at the first moment of possession, and not thereafter.  *Mora v. J&M Plating, Inc.*, 2022 IL App (2d) 210692 ¶ 43.

5.    In direct violation of each of the foregoing provisions of BIPA §§ 15(a) and 15(b), Defendant possessed, collected, captured, stored used, or otherwise obtained—without first providing notice, obtaining informed written consent or publishing data retention policies—the biometrics of the end-users of its Microsoft Azure ("Azure") service.

6.      BIPA confers on Plaintiff and all other similarly situated Illinois residents a right to know of the risks that are inherently presented by the collection and storage of biometrics, and a right to know how long such risks will persist after having their facial geometry possessed and collected by Microsoft.

7.      Plaintiff bring this action to prevent Defendant from further violating the privacy rights of Illinois residents and to recover statutory damages for Defendant's improper and lackluster collection, storage, usage, and protection of Azure end-users' biometrics in violation of BIPA.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are more than 100 class members, and at least one member of the proposed class is citizen of state different from at least one Defendant.

9.      This Court has specific personal jurisdiction over Defendant because (1) during the relevant time period, Defendant was registered to and did, in fact, conduct business in Illinois, (2) the biometrics that give rise to this lawsuit belong to Illinois residents, (3) the biometrics that give rise to this lawsuit were collected, by Defendant, from individuals located in Illinois.  Defendant has also waived any challenges to personal jurisdiction pursuant to Fed. R. Civ. P. 12(h)(1)(A).

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because substantial part of the events giving rise to the claim occurred in this District.  Defendant has also waived any challenges to venue pursuant to Fed. R. Civ. P. 12(h)(1)(A).

## PARTIES

11.     Plaintiff Cody Clark is, and has been at all relevant times, a resident of Chicago, Illinois and has an intent to remain there, and is therefore a citizen of Illinois.  Plaintiff Clark's biometrics were possessed, collected, captured, stored, and/or otherwise obtained by Defendant in or around August 2020 when Plaintiff Clark—while he was located within the state of Illinois—uploaded a video of himself to one Defendant's clients, Brainshark.  Brainshark then provided the video of Plaintiff Clark to Defendant's Azure and/or AI Face service, from which Microsoft created, extracted, and stored Plaintiff Clark's facial geometry (his biometric identifier), as well as extracted the text of Plaintiff Clark's speech.  Microsoft then used Plaintiff's facial geometry to identify him (his biometric information), as well as to analyze his perceived emotions.  Thus, Microsoft possessed, collected, captured, stored, and/or otherwise obtained Plaintiff Clark's biometrics.

12.     Defendant Microsoft Corporation is a Washington corporation with its headquarters in Redmond, Washington.  Defendant maintains a registered agent in Illinois, is licensed to conduct business in Illinois, and does, in fact, conduct substantial business (including business stemming from and/or related to its Azure and ACS platforms) throughout Illinois, including in Cook County.

## FACTUAL BACKGROUND

### I.     Illinois' Biometric Information Privacy Act

13.     The use of biometric facial geometry by its nature involves serious risks.  Unlike other methods of identification, one's facial geometry is a permanent, unique biometric identifier associated with an individual.  This exposes individuals to serious and irreversible privacy risks.  For example, if a device or database containing individuals' facial geometries is hacked,

breached, or otherwise exposed, individuals have no means by which to prevent identity theft and unauthorized tracking.

14.     Recognizing the need to protect citizens from these risks, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA") in 2008, to regulate companies that collect and store biometric information, such as voiceprints.  *See* Illinois House Transcript, 2008 Reg. Sess. No. 276.

15.     BIPA makes it unlawful for a company to, *inter alia*, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers and/or biometric information, unless it first:

> (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative."

740 ILCS 14/15(b)(1)-(3).

16.     Section 15(a) of BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

17.     As alleged below, Defendant violated these provisions of BIPA when it possessed, collected, captured, stored, used, or otherwise obtained Azure end-users' biometrics without adhering to BIPA's safeguards.

## II.     Defendant Violates Illinois's Biometric Information Privacy Act

18.     Microsoft provides, licenses, and/or otherwise sells its cloud platform Microsoft Azure ("Azure") to various clients (in this case Brainshark).

19.     Azure is a "cloud platform" consisting of "more than 200 products and cloud services" that Microsoft provides to a variety of clients, such as website or mobile application developers and other large corporations.[3]

20.     Azure is a "software-as-a-service" ("SaaS"), meaning Microsoft's clients "license" the Azure software, but all relevant data and functions are conducted by Microsoft, and "[a]ll of the underlying infrastructure, middleware, app software, and app data are located in the service provider's [in this case, Microsoft's] data center."[4]

21.     A common example of a Saas is "a web-based email service such as Outlook, Hotmail, or Yahoo! Mail … With these services, you log into your account over the Internet, often from a web browser. The email software is located on the service provider's network, and your messages are stored there as well."[5]

22.     Among the various services Microsoft provides through Azure is its Azure "Cognitive Services for Vision," through which Microsoft "read[s] text, analyze[s] images, and detect faces with technology like optical character recognition (OCR) and machine learning."[6]

---

[3] https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-azure/.

[4] *See* https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-saas.

[5] *Id.*

[6] https://portal.vision.cognitive.azure.com/gallery/imageanalysis.

23.     As noted above, one of the services provided through the Azure "AI Face service," through which Microsoft uses AI algorithms to "detect, recognize, and analyze human faces in images."[7] Specifically, AI Face "captures facial features and creates a pattern of facial features which it uses to identify or group a face."[8]

24.     Microsoft lays out the general "facial recognition process" as follows, which is explained in more detail below:

Facial recognition process:

 An image is captured

 AI image recognition software reads the geometry of the face in the image by looking at the distance between key facial features, creating a unique facial template

 The facial template is compared to a database of known, stored, or available faces

 A determination is made if a match is found in the existing database

25.     *First*, an Azure client (in this case, Brainshark) uploads a raw image or video to Microsoft. The client does not upload biometrics to Microsoft. Instead, Microsoft first extracts and creates those biometrics from the image or video as explained below.

26.     *Second*, Microsoft, through the AI Face service, analyzes the image or frames of the video[9] for various objects using a "bounding box." The bounding box identifies the various objects in an image or video frame, including but not limited to faces[10]:

---

[7] https://learn.microsoft.com/en-us/azure/ai-services/computer-vision/overview-identity.

[8] https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-face-recognition/#features.

[9] A "video is a series of still images that, when viewed in order at a certain speed, give the appearance of motion," much like a flipbook. https://www.techsmith.com/blog/frame-rate-beginners-guide/#. "Each of those images is called a 'frame.'" *Id*. So, when Microsoft analyzes a video, it is essentially analyzing dozens of individual images that have been stitched together to create the appearance of motion.



27.    *Third*, if Microsoft detects a face in the image or video frame, it will extract, create, and capture "facial landmark" data, which are the X-Y coordinates of various features of a face[11]:

//

//

//

//

//

---

[10] https://portal.vision.cognitive.azure.com/demo/video-summary-and-frame-locator.

[11] https://learn.microsoft.com/en-us/training/modules/detect-analyze-faces/1-introduction.

8



28. The X-Y coordinates of the face constitute a person's "facial geometry" and are therefore "biometric identifiers."



29.     Again, the photographs and videos are not being sent with biometric identifiers created by the client.  Nor is Microsoft providing a product through which the client captures and creates biometric identifiers that are simply stored on Microsoft's servers (although it is true the biometrics are ultimately stored on Microsoft's servers).  Instead, the photographs and videos are being sent to Microsoft, and *Microsoft itself* is extracting and creating (and thus, capturing and collecting) biometric identifiers from those photographs and videos through its Azure service. *Rivera v. Amazon Web Services, Inc.*, 2023 WL 4761481, at *5 (W.D. Wash. July 26, 2023) (finding Amazon took an "active step" to collect biometrics where "Plaintiffs allege that Amazon's program, Rekognition, accesses images after they have been uploaded, and extracts the facial geometry of the individuals pictured into a feature vector") (cleaned up).

30.     *Fourth*, any "facial geometry" extracted, created, collected, captured, or otherwise obtained by Microsoft is stored on Microsoft's servers. The facial geometry is then associated with a particular individual in Microsoft's database.

31.     The fact that Microsoft is storing facial geometry on its servers is clear from the "endpoint" (*i.e.*, where the data is going) of the facial geometry data, which is Microsoft:

```
Endpoint: https://eastus.api.cognitive.microsoft.com/face/v1.0/detect?

Response:
[
  {
    "recognitionModel": "recognition_01",
    "faceRectangle": {
      "width": 128,
      "height": 178,
      "left": 161,
      "top": 90
    },
    "faceLandmarks": {
      "pupilLeft": {
        "x": 189.8,
        "y": 164
      },
      "pupilRight": {
        "x": 245.7,
        "y": 163
      },
      "noseTip": {
        "x": 214.4,
        "y": 197.1
      },
```

10

32.     Further, as the Court recognized, Microsoft's Products and Services Data Protection Addendum (ECF No. 16-1) "states that Microsoft controls access to Customer Data and Professional Services Data (including any Personal Data therein)." *Clark v. Microsoft Corp.*, 2023 WL 5348760, at *4 (N.D. Ill. Aug. 21, 2023) (cleaned up).  Thus, it is clear any facial geometry created and extracted by Microsoft is being sent to, stored in, and thus, possessed by Microsoft in Microsoft's servers.

33.     *Fifth*, assume the client (again, in this case, Brainshark) uploads another image or video to Microsoft. Microsoft again analyzes the image or video for any objects and creates and extracts the facial landmark data (facial geometry) from any face it detects.  If the facial geometry from the new image or video matches the facial geometry of an individual whose facial geometry is stored on Microsoft's servers, that person will then be identified in the new image or video using their facial geometry:



34.     Because Microsoft is using the facial geometry it has collected to identify an individual, that facial geometry is thus "biometric information."

35.     *Sixth*, through its Azure AI Vision suite of services, Microsoft can provide additional analysis on any image or video beyond facial recognition. For instance, Azure can extract text from a video, such as what is being spoken by the subject:



36.     Further, prior to June 2022, Microsoft Azure could "infer emotional states and identity attributes such as gender, age, smile, facial hair, hair, and makeup" through its AI Face service.[12]     Azure could detect "anger, contempt, disgust, fear, happiness, neutral, sadness, and surprise, in a facial expression based on perceived annotations by human coders."[13]

---

[12] https://azure.microsoft.com/en-us/blog/responsible-ai-investments-and-safeguards-for-facial-recognition/.

[13] https://learn.microsoft.com/en-us/xamarin/xamarin-forms/data-cloud/azure-cognitive-services/emotion-recognition.



37.     *Finally*, Microsoft returns the results of its analysis to its clients. For instance, if a client requests that Microsoft identify whether a particular person appears in an image or video, Microsoft will return that information to the client, but store any facial landmark data Microsoft collected in the process on Microsoft's servers.

38.     Microsoft provides its Azure service to numerous clients across various industries. If Microsoft provides a specific service to one company (such as AI Face), that service is provided in a substantially similar if not identical manner to another company.

39.     One client to whom Microsoft provides services through Azure is Brainshark, Inc. ("Brainshark"), a purveyor of "sales enablement and readiness solutions."[14]  Brainshark has been a Microsoft customer[15] and "close partner"[16] since the company's beginnings, in 1999,[17] and Brainshark has been featured prominently in public-facing case studies published on Microsoft's website as recently as 2017.[18]

40.     Per Michael Ferioli, VP of Engineering for Brainshark, the very "first lines of code for [Brainshark's] solution were written using Microsoft technologies—developing in C and using .NET with SQL Server in the back end."[19]  Today, "[u]sing a full suite of Microsoft technologies, the new Brainshark sales training solution provides a completely immersive simulation environment where sales people can practice and master their presentation performance before ever standing in front of a live client."[20]

41.     Among the "suite of Microsoft technologies" that Microsoft provides to Brainshark is Azure.  Specifically, Brainshark content is stored on Azure's servers, and Brainshark's technology is "based on Microsoft augmented reality, biometric and motion sensing, AI, machine learning and analytics technology."

---

[14] https://www.prnewswire.com/news-releases/brainsharks-new-ai-powered-engine-elevates-sales-coaching-and-readiness-300659319.html.

[15] https://www.brainshark.com/sites/default/files/microsoft-case-study-brainshark.pdf.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

42.     As relevant here, Microsoft provides the AI Face service of Azure to Brainshark. Thus, when Brainshark provides a video recording of a sales representative to Microsoft, Microsoft (i) detects any faces in the frames of the video, and creates, extracts, captures, collects, or otherwise obtains the facial geometry (biometric identifiers) of the salesperson; (ii) uses the facial geometry to identify the particular salesperson (biometric information); (iii) stores the salesperson's biometrics on Microsoft's servers; and (iv) analyzes the emotions of a particular salesperson and transcribes the text of the video, among other features.  Microsoft then provides this analysis to Brainshark, which Brainshark can, in turn, provide to its own clients.



43.     All of this happens unbeknownst to the salespersons whose videos Brainshark uploads to Azure. Thus, unbeknownst to salespersons, when they provide videos of their sales pitches to Brainshark, they are also providing those videos to Brainshark's cloud-service provider, Microsoft. Microsoft then uses Azure to perform facial recognition on the salespersons' face, identify the salesperson, and analyze the salesperson's emotions. In other words, when

15

salespersons use Brainshark to improve their sales pitches, their biometrics are created and extracted—and thus, possessed, collected, captured, and otherwise obtained—by Microsoft in order to identify the salesperson for Brainshark.

44. When Microsoft extracts and creates biometrics from the images and videos it receives (and thus, collects, captures, and/or otherwise obtains biometrics), it fails to do so in compliance with BIPA. Specifically, in violation of BIPA § 15(b), Microsoft fails to procure the prior consent of its clients' end-users (*e.g.*, the salespersons whose videos Brainshark uploads to Microsoft) whose biometrics Microsoft collects to collect said biometrics, fails to inform the end-users that Microsoft is collecting their biometrics, and fails to inform the end-users of the specific purpose and length of time for which their biometrics are being collected, stored, and used.

45. Further, in violation of BIPA § 15(a), Microsoft failed to develop a retention schedule and deletion guidelines for permanently destroying biometrics at the time Microsoft first possessed the biometrics of these salespersons, and Microsoft failed to delete any biometrics in its possession when the initial purpose for collecting or obtaining the biometrics had been satisfied.

46. As of July 2023—but not necessarily before—Microsoft tells its clients they "are responsible for: (i) providing notice to data subjects, including with respect to retention periods and destruction; (ii) obtaining consent from data subjects; and (iii) deleting the Biometric Data, all as appropriate and required under applicable Data Protection Requirements."[21] This is insufficient, as Microsoft could take various steps to comply with BIPA itself, such as "program[ing] [Azure] so that it will not run unless and until it provides BIPA-compliant notice

---

[21] https://learn.microsoft.com/en-us/azure/ai-services/computer-vision/overview-identity.

and obtains BIPA-compliant consent from end users, either through [its clients'] interface[s] or otherwise." *Rivera*, 2023 WL 4761481, at *10 ("[T]he Court is not convinced that Amazon's inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations under BIPA.").

### III. Plaintiff's Experience

47. In or around August 2020, Plaintiff Cody Clark was employed as a salesperson at ConMed Corporation ("ConMed"). Plaintiff was in Illinois while employed by ConMed.

48. During Plaintiff's time at ConMed, ConMed partnered with Brainshark to improve ConMed's salespersons' effectiveness. Thus, as part of his employment at ConMed, Plaintiff was required to record a video of a practice sales pitch, which was provided to Brainshark for analysis.

49. Unbeknownst to Plaintiff, when he provided his video to Brainshark in or around August 2020, he was also providing that video to Brainshark's cloud-service provider, Microsoft.

50. When Microsoft received Plaintiff's video from Brainshark, Microsoft (i) detected Plaintiff's face in each frame of the video; (ii) extracted Plaintiff's facial landmark data (*i.e.*, his facial geometry, or biometric identifier) from each frame of the video in which his face appeared; (iii) used Plaintiff's facial geometry to identify him in each frame of the video in which his face appeared (biometric information); (iv) analyzed any of Plaintiff's emotions in the face through his facial geometry, and transcribed his speech during the video; and (v) stored Plaintiff's facial geometry on Microsoft's servers. Microsoft then provided the results of its facial analysis to Brainshark, which in turn provided those results to Plaintiff and ConMed.

51. Through the aforementioned process, Microsoft in the first instance created and extracted Plaintiff's biometrics. Brainshark did not send Plaintiff's biometrics to Microsoft, only

the video of the same. Thus, through the aforementioned process, Microsoft possessed, captured, collected, stored, used, and otherwise obtained Plaintiff's biometrics.

52.     At no time did Plaintiff receive notice from Defendant, in writing or any other form, that Defendant Microsoft was capturing, collecting, storing, using, or otherwise obtaining his biometrics.

53.     At no time did Plaintiff receive notice from Defendant, in writing or any other form, of the specific purpose and length of term for which his biometrics were being collected, stored, and used by Defendant.

54.     At no time was Plaintiff asked by Defendant to provide consent for Defendant to collect, store, or use his biometrics.

55.     At no time did Plaintiff give Defendant permission in writing or any other form for—or otherwise consent or agree to—the collection, storage, or use of his biometrics.

56.     Likewise, Defendant never provided Plaintiff with any opportunity to prohibit or prevent the collection, storage, or use of his biometrics.

57.     At no time while possessing Plaintiff's biometrics—or, at the very least, at the first moment it possessed Plaintiff's biometrics—did Defendant maintain a publicly available retention and deletion schedules for biometrics. Thus, Defendant still has not deleted Plaintiff's biometrics despite the initial purpose for said possession having elapsed, and more than three years having passed.

58.     As a result of the foregoing, Defendant Microsoft invaded Plaintiff Cody Clark's statutorily protected right to privacy in his biometrics in violation of BIPA §§ 15(a) and 15(b).

## CLASS ALLEGATIONS

59.     **Class Definition**: Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (the "Azure Class"):

> All Illinois citizens whose biometric identifiers and/or biometric information were possessed, collected, captured, stored, used, or otherwise obtained by Microsoft through its Azure service and stored in Microsoft's servers.

60.     Plaintiff also brings this action on behalf of a subclass of Illinois citizens who uploaded a video to Brainshark and whose biometric identifiers and/or biometric information were possessed, collected, captured, stored, used, or otherwise obtained by Microsoft through its Azure service and stored in Microsoft's servers (the "Brainshark Subclass").

61.     The Azure Class and the Brainshark Subclass shall be collectively referred to as the "Class."

62.     The following are excluded from the Class: (i) any Judge presiding over this action and members of his or her family; (ii) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (iii) persons who properly execute and file a timely request for exclusion from the Class; (iv) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (v) Plaintiff's counsel and Defendant's counsel; and (vi) the legal representatives, successors, and assigns of any such excluded persons.

63.     **Numerosity:** Based on the size of Defendant's business, the number of people within the Class are estimated to be substantial, amounting to thousands of persons.  It is, therefore, impractical to join each member of the Class as a named plaintiff.  Moreover, Class

Members can be identified through Defendant's records, discovery, and other third-oarty
sources.

64.     **Commonality and Predominance:** There are many questions of law and fact
common to Plaintiff's and the Class's claims, and those questions predominate over any
questions that may affect individual members of the Class. Common questions for the Class
include, but are not necessarily limited to the following:

> (a)     whether Defendant possessed, collected, captured, stored, or
> otherwise obtained Plaintiff's and the Class's biometric identifiers or
> biometric information;

> (b)     whether Defendant properly informed Plaintiff and the Class of its
> purposes for collecting, using, and storing their biometric identifiers
> or biometric information;

> (c)     whether Defendant obtained a written release (as defined in 740 ILCS
> 14/10) to collect, use, and store Plaintiff's and the Class's biometric
> identifiers or biometric information;

> (d)     whether Defendant used Plaintiff's and the Class's facial geometry to
> identify them; and

> (e)     whether Defendant's violations of BIPA were committed
> intentionally, recklessly, or negligently.

65.     **Typicality:** because the named Plaintiff, like all other Class Members, is an
Illinois citizen whose biometrics were possessed, collected, captured, stored, used, and/or
otherwise obtained by Defendant through Azure.

66.     **Adequacy:** Plaintiff has retained and is represented by qualified and competent
counsel who are highly experienced in complex consumer class action litigation. Plaintiff and his
counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiff is able to
fairly and adequately represent and protect the interests of such a Class. Neither Plaintiff nor his
counsel have any interest adverse to, or in conflict with, the interests of the absent members of
the Class. Plaintiff has raised viable statutory claims or the type reasonably expected to be raised

by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiff may seek leave of this Court to amend this Complaint to include additional Class representatives to represent the Class, additional claims as may be appropriate, or to amend the Class definition to address any steps that Defendant took.

67. **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford to pursue individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compliance with BIPA.

## CAUSES OF ACTION

### COUNT I
### Violation Of 740 ILCS 14/15(a)

68. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

70. BIPA mandates that companies in possession of biometrics establish and maintain a satisfactory biometric retention and deletion policy. Specifically, those companies must:

(i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometrics; and (ii) delete the biometrics when the initial purpose for collecting or using the biometrics is no longer required. *See* 740 ILCS 14/15(a).

71.     Any such retention and deletion schedule must be created at the first moment of possession, and not thereafter. *Mora*, 2022 IL App (2d) 210692 ¶ 43.

72.     Defendant failed to comply with these BIPA mandates.

73.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

74.     Plaintiff and Class Members are individuals who had their "biometric identifiers" (their facial geometry) possessed by Defendant, as explained in detail above. 740 ILCS 14/10.

75.     Plaintiff's and Class Members biometric identifiers were used to identify Plaintiff Class Members, and therefore, constitute "biometric information" as defined by BIPA. 740 ILCS 14/10.

76.     Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. 740 ILCS 14/15(a).

77.     Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometrics.

78.     Defendant failed to destroy Plaintiff's and the Class's biometrics after the initial purpose for collecting or using the biometrics had elapsed.

79.     On behalf of himself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA § 15(a)'s requirements for the possession of

biometric identifiers and biometric information as described herein; (iii) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (iv) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**COUNT II**
**Violation Of 740 ILCS 14/15(b)**

80.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

82.     BIPA § 15(b) makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject … in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject … in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 ILCS 14/15(b) (emphasis added).

83.     Defendant failed to comply with these BIPA mandates.

84.     Defendant is a corporation and does business in Illinois and thus qualifies as a "private entities" under BIPA. *See* 740 ILCS 14/10.

85.     Plaintiff and Class Members are individuals who have had their "biometric identifiers" (facial geometry) collected, captured, and/or otherwise obtained by Defendant, as explained in detail above. *See* 740 ILCS 14/10.

86.     Plaintiff's and the Class's biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA.  *See* 740 ILCS 14/10.

87.     Defendant collected, captured, stored, used, and/or otherwise obtained Plaintiff's and the Class's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

88.     Defendant never informed Plaintiff, and never informed any Class Member, in writing that their biometric identifiers and/or biometric information were being collected, captured, stored, used, and/or otherwise obtained, nor did Defendant inform Plaintiff and the Class in writing of the specific purpose(s) and length of term for which Plaintiff's and the Class's biometric identifiers and/or biometric information were being collected, stored, used, and/or otherwise obtained as required by 740 ILCS 14/15(b)(1)-(2).

89.     By collecting, capturing, storing, using, and/or otherwise obtaining Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendant violated Plaintiff's and the Class's rights to privacy in their biometric identifiers and/or biometric information as set forth in BIPA § 15(b).

90.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA § 15(b)'s requirements for the collection, capture, storage, use, and/or obtainment of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)  For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)  For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)  For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)  For prejudgment interest in all amounts awarded;

(f)  For an order of restitution and all other forms of equitable monetary relief; and

(g)  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and cost of suit.

## JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated: September 19, 2023             Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
     Philip L. Fraietta

Joseph I. Marchese
Philip L. Fraietta
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150

25

Facsimile:  (212) 989-9163
E-Mail: jmarchese@bursor.com
       pfraietta@bursor.com
       mroberts@bursor.com

*Counsel for Plaintiff and the Putative Class*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Facsimile:  (212) 686-0114
E-mail: malmstrom@whafh.com

*Local Counsel for Plaintiff and the Putative Class*